```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
BLASTERS, DRILLRUNNERS AND MINERS              REPORT AND
UNION LOCAL 29,                                RECOMMENDATION

                    Petitioner,                10-CV-4777(KAM)(MDG)

     - against -

TROCOM CONSTRUCTION CORP.,

                    Respondent,
----------------------------------------X
```

Petitioner BLASTERS, DRILLRUNNERS AND MINERS UNION LOCAL 29 ("Union") commenced this action to enforce an arbitration award against respondent TROCOM CONSTRUCTION CORP. ("Trocom"). By order dated March 4, 2011, the Honorable Kiyo A. Matsumoto referred plaintiff's motion for default judgment to me for a report and recommendation as to damages. Defendant Trocom subsequently appeared and now seeks vacatur of the Clerk of Court's entry of default.

## FACTS AND PROCEDURAL HISTORY

Petitioner filed the petition herein to enforce an arbitration award on October 19, 2010. See ct. doc. 1. In an affidavit of service dated December 22, 2010, process server Gerald K. Murray swore that on December 14, 2010 he delivered a true copy of the complaint and summons on Trocom Construction Corp. by delivering it personally to "Anthony S.", an authorized agent at 46-27 54th Road, Maspeth, New York. See ct. doc. 2. After respondent failed to answer by January 4, 2011, plaintiff

moved for entry of default. See ct. doc. 3. The Clerk of Court noted entry of default on February 24, 2011 pursuant to Federal Rule of Civil Procedure 55(a). See ct. doc. 5.

On March 8, 2011, Scott Green filed notice of appearance on behalf of defendant Trocom. See ct. doc. 7. At an initial conference held on March 18, 2011, Plaintiff's counsel indicated that his client would not consent to vacating entry of default. Defendant subsequently filed the instant motion to vacate. In its motion, Trocom argues that it was not a signatory to a collective bargaining agreement for the time period at the time petitioner sought an arbitration hearing and thus neither had the obligation to make contributions to the multi-employer plan, nor to participate in the arbitration. Trocom further contends that the Petition to Confirm Arbitration Award was not properly served upon it.

DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure confers on courts the discretion to enter default judgment against a party for failure to "plead or otherwise defend." Fed. R. Civ. P. 55(a). On the other hand, Rule 55(c) provides that "[f]or good cause shown the court may set aside an entry of default." Fed. R. Civ. P. 55(c). While recognizing that defaults "play a constructive role in maintaining the orderly and efficient administration of justice," Enron Oil Corp. V. Diakuhara, 10 F.3d 90, 96 (2d. Cir. 1993), the Second Circuit generally disfavors

2

defaults because of the Court's strong preference for resolving trials on the merits. See, e.g., Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001); Am. Alliance Ins. Co. V. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996); Enron, 10 F.3d at 95. A default judgment is a "weapon of last, rather than first, resort, [and] should only be imposed upon a serious showing of willful default." Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1982) (internal quotations and citations omitted). However, when "a litigant is confronted by an obstructionist adversary," Enron, 10 F.3d at 96, or the defendant causes continued uncertainty and delay in an action, default judgment is appropriate, see 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2681 (1998). Dispositions of default judgment are left to the sound discretion of the district court. See State St. Bank & Trust Co. V. Inversiones Errazuriz Limitada, 374 F.3d 158, 166 (2d Cir. 2004); see also Enron, 10 F.3d at 95 ("[The] district court . . . is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties").

In determining whether to vacate a default, a court should consider (1) whether the default was willful; (2) whether setting aside the default would prejudice the plaintiff; and (3) whether the defendant has a meritorious defense. See, e.g., State St. Bank, 374 F.3d at 166-67; Pecarsky, 249 F.3d at 171; S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). Although courts in the Second Circuit utilize these three considerations in

3

analyzing motions both under Rule 55(c) as well as Rule 60(b), the showing of good cause under 55(c) is in fact less stringent than the excusable neglect which must be established under 60(b). See <u>L.A. Gear, Inc. v. Kobacker Company, Inc.</u>, 1994 WL 455573 (S.D.N.Y. Aug, 23 1994). A court may also consider whether the default was made in good faith and whether the default would bring about a harsh or unfair result. <u>Enron</u>, 10 F.3d at 96. Because defaults are viewed with disfavor, any doubts should be resolved in favor of the party seeking relief from the default. See, e.g., <u>Enron</u>, 10 F.3d at 95-96; <u>Davis</u>, 713 F.2d at 915.

A finding of willfulness requires a showing that the defaulting party engaged in deliberate or egregious conduct. <u>Am. Alliance</u>, 92 F.2d at 61. In finding that the default was willful, the court must be persuaded that the defendant made a strategic decision and deliberately chose not to appear. See <u>Pecarsky</u>, 249 F.3d at 173. Mere negligence or carelessness is insufficient for a finding of willfulness. See, e.g., <u>Am. Alliance</u>, 92 F.2d at 60 (finding default due to misfiling of complaint for two months was not willful, but grossly negligent); <u>Brien v. Kullman Indus., Inc.</u>, 71 F.3d 1073, 1078 (2d Cir. 1995)(finding defendant's failure to file answer was not willful, because he "incorrectly assumed that the answer was to be filed after the petition for removal was granted").

In support of its argument that the default was not willful, Trocom submits the affidavit of Salvatore Trovato, President of Trocom, that Trocom was not served with a copy of the complaint.

See ct. doc. 17 ¶¶ 17-18. Under New York law, a process server's affidavit of service establishes prima facie proof of proper service, which can be refuted only if a defendant offers "specific facts to rebut the statements in the process server's affidavit." Old Republic Inc. Co. v. Pacific Fin. Servs., 301 F.3d 54, 57-58 (2d Cir. 2002). In the affidavit of service, petitioner's process server states that he served the petition upon "Anthony S., Authorized Agent," who is described as a 60 year old, six foot tall white male weighing 190 pounds and having brown hair. See ct. doc. 2. Respondent counters with the affidavit of Salvatore Trovato, President of Trocom ("Trovato Aff."), swearing that Trocom does not employ any person meeting the description of the person in the affidavit of service. See ct. doc. 16 at ¶ 6. Although Mr. Trovato should have clearly indicated in his affidavit whether Trocom employs anyone with the name of Anthony or having the physical characteristics of the individual served by the process server, I find his statement sufficient to raise an issue as to proper service. Cf. Garcia v. Maersk, Inc., 2005 LEXIS 12357 at *9 (E.D.N.Y. June 25, 2005) (defendant stated that "no Joe 'Smith' works at MTC" but did not attest that no one by that name or meeting the physical description contained in the affidavit of service worked at MTC).

Significantly, in Garcia and a number of other reported cases involving claims of improper service, the court found wilfulness, in part, because the defendant's delay in moving to vacate only after entry of default judgment. Id. (motion filed

5

two months after entry of default and one month after entry of default judgment); see also, e.g., Old Republic, 301 F.3d 54 (motion to vacate filed 13 years after entry of default judgment); United States v. Riser, 2011 LEXIS 27000 (E.D.N.Y. March 16, 2011) (motion to vacate filed over a year after entry of default judgment); Cablevision Systems New York City v. Hall, 2005 WL 2649025 (S.D.N.Y. Oct. 14, 2005) (motion to vacate filed over four years after entry of default judgment). In contrast, counsel for respondent contacted petitioner one day after entry of default on February 25, 2011 and, although not filing a notice of appearance within three days as requested by petitioner, did file a notice of appearance on March 8, 2011, five days after petitioner filed a motion for default judgment. See Aff. of Angelo Bisceglie, ct. doc. 20 at ¶¶ 8-11; ct. doc. 7 (notice of appearance). That Trocom appeared in this action less than three months after the process server served "Anthony S." also supports a finding that Trocom's default was not wilful.

Petitioner disputes Mr. Trovato's statement by pointing to Trocom's past conduct in ignoring an arbitration demand and notice of an arbitration hearing, ignoring the entry of an arbitration award against it, and defaulting in several other proceedings brought by labor organizations in NY federal courts. Petitioner contends such past conduct is sufficient to establish that Trocom engaged in deliberate conduct amounting to willfulness in this action. See Russo Affid. ¶36. Whether the respondent defaulted in the underlying arbitration proceeding is

6

irrelevant to determination whether the respondent willfully failed to appear in this action. Moreover, petitioner's suggestion that Trocom deliberately ignored the arbitration hearing and award is not entirely correct. Mr. Trovato admits that he received the arbitration demand, a fax from the arbitrator giving notice of the arbitration hearing and a copy of the underlying arbitration award, but denies receipt of a formal notice of the hearing. Trovato Aff. at ¶¶ 12-14. He also avers that after receipt of the award, he contacted petitioner and the arbitrator immediately in July 2010, to no avail. Id. at ¶ 14.

Likewise, Trocom's default in three other federal court actions is of limited probative value in establishing Trocom's deliberate conduct here. Significantly, the docket sheets for those three actions indicate that Trocom did not contest entry of default or default judgment, unlike here. See ct. doc. 20, Exh. A. In two of the cases, Trocom satisfied the default judgment entered and in the third, the plaintiff voluntarily dismissed the action. Id. To the extent Trocom's default in the other actions is admissible and relevant here, such evidence clearly does not support petitioner's suggestion that Trocom intentionally defaulted for tactical reasons in order to delay the progress of the other cases.

Thus, I find insufficient evidence to establish bad faith or deliberate conduct on the part of respondent amounting to willfulness. Defendant's defaults in the underlying arbitration proceedings and other court actions, while arguably admissible,

7

do not establish willfulness or proper service here.

Second, there is no showing of prejudice to petitioner if default is vacated. Although petitioner complains that respondent has caused delay, delay alone is insufficient to establish prejudice. See e.g., Enron, 10 F.3d at 98. Rather, "it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunities for fraud and collusion." Davis, 713 F.2d at 916 (internal quotations and citations omitted). Here, respondent's delay in appearing was only two months.

Finally, I find that respondent has proffered a potentially meritorious defense. The respondent does not need to establish its defense conclusively, but it must present facts that "if proven at trial would constitute a complete defense." McNulty, 137 F.3d at 740; Enron, 10 F.3d at 98. The evidence submitted "is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Enron, 10 F.3d at 98.

Trocom claims that although it entered into a collective bargaining agreement with the Union in 2004 for the period 2004-2006, it has not negotiated and is not bound by any successor agreements. See Trovato Affid. ¶¶ 6, 9. It points to a short form agreement dated December 2, 2004 in which Trocom agreed to be bound to the agreement between the General Contractors Association of New York ("GCANY") and the Union. See Trovato

Affid. Exh. A.  Trocom further claims that it is not and has never been a member of the GCANY. <u>See</u> Trovato Affid. ¶ 8.  As such, it does not believe it is bound to agreements, and specifically here, successor agreements, negotiated between the GCANY and the Union. <u>Id</u>. ¶ 9. Trocom relies on <u>Tile Setters and Tile Finishers Union of New York and New Jersey v. Speedwell Designs/BFK Enterprise, LLC</u>, 2009 WL 922021 (E.D.N.Y. 2009), a case in which the Court found that, notwithstanding the presence of an evergreen clause, the union could not enforce an arbitration against a respondent who did not participate in negotiating the agreement in question.

Petitioner responds that due to a "sweeping arbitration clause" in the 2004-2006 agreement, which does not exclude disputes of the termination provision or "evergreen" clause, the issue of whether Trocom is bound by any successor agreement is an issue for the Arbitrator, not the court. Petitioner argues that <u>Speedwell</u> is distinguishable because: 1) <u>Speedwell</u> involved a motion to compel arbitration while this case involves the enforceability of an arbitration award; 2) unlike the agreement in <u>Speedwell</u>, the agreement to which Trocom was a signatory specifically referenced and incorporated "as amended and extended from time to time" the master agreement between the GCANY and the union; and 3) the scope of the consecutive arbitration provisions in this case are identical, unlike the different provisions in Speedwell. Petitioner also does not address Trocom's claim regarding its membership in the GCANY.

Despite petitioner's contention, this Court has jurisdiction over this matter. At issue in this case is the preliminary issue as to "[t]he existence of a valid contract to arbitrate, and the scope of that contract to arbitrate, [which] are matters for the court, not the arbitrator." Tile Setters, 2009 WL 922021 at *7.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that petitioner's motion for a default judgment be denied and respondent Trocom's request to vacate entry of default be granted. I also recommend that the respondent's time to answer or otherwise respond to the complaint be extended to ten days after the date the Court adopts this report and recommendation, if it so chooses.

This report and recommendation will be filed and a copy sent electronically to the parties on this date. Any objections must be filed with the Clerk of the Court, with a copy to Judge Matsumoto, on or before September 1, 2011. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 72.

SO ORDERED.

Dated: August 15, 2011
       Brooklyn, New York

                                          _____/s/_____
                                          MARILYN D. GO
                                          United States Magistrate Judge